J. H. WILLIAMSON, et al. v. NEAL HOWELL, Administrator.

Western Section.   May 8, 1931.

Petition for Certiorari denied by Supreme Court, December 19, 1931.

Pearson & Hewgley, of Jackson, for plaintiff in error.

Hu L. Anderson, T. J. Murray, of Jackson, and J. T. Gray, Jr., of Brownsville, for defendant in error.

OWEN, J. J. H. Williamson, the defendant below and hereinafter called defendant, has appealed from a judgment rendered against him in favor of Neal Howell, administrator of the estate of Mrs. Mollie Howell. The judgment was rendered in the Circuit Court of Madison County, and for the sum of $5000.

Mrs. Mollie Howell, it appears, lost her life in an automobile accident on the Tennessee State Highway No. 1, at a point about twelve miles west of Jackson, Tennessee. The intestate received injuries by the automobile in which she was riding being turned over. Her death occurred about forty-eight hours after the accident. The car, at the time of the accident, was being operated by the wife of the defendant, who was the daughter of the deceased; the defendant is a son-in-law of the deceased.

Mrs. Howell, at the time of her death, was sixty-four years of age, her health was good. She was a widow and resided in Jackson, Tennessee. The defendant resided in Brownsville, Tennessee.

Mrs. Howell had been visiting her daughter and son-in-law, and on the day of the accident, Mrs. Williamson drove defendant's car to Jackson, accompanied by her mother and a neighbor and friend of Mrs. Williamson's, Mrs. Lee Smoot. The accident occurred October 28, 1928. Mrs. Williamson, at the time of the accident, was returning to her home, Mrs. Smoot was on the front seat sitting by the side of Mrs. Williamson who was operating the automobile. Mrs. Howell was seated on the rear seat. It appears that Mrs. Howell left five children surviving, and this suit was instituted for their benefit.

The declaration is based on the allegation that Mrs. Williamson was the agent of her husband in the operation of said automobile. The declaration alleges that she failed and neglected to keep the proper lookout ahead while driving said automobile, that she failed and neglected to keep said automobile under reasonable and proper control, that she operated said automobile at a dangerous excessive rate of speed, and that she failed and neglected to take the proper precaution, and to exercise the ordinary care for the safety of the passengers and the occupants of said automobile. The declaration, also, contains the following averment:

That at the time of said accident the automobile was being operated and controlled by the agent and servant of the defendant who was then and there a member of the defendant's family pursuant to and in furtherance of the object and purpose for which said automobile was acquired, owned and kept by defendant, namely for the pleasure and convenience of the members of his family, and with the full knowledge, consent and permission of the defendant.

The defendant filed a plea of not guilty. There was a trial before the Court and Jury at the February Term, 1930. After the jury returned its verdict a motion for a new trial was seasonably entered; this was continued until the June Term, 1930, when it was overruled.

The defendant excepted, prayed and perfected an appeal, and has assigned fourteen errors. The defendant offered no evidence. There was a motion for a directed verdict at the conclusion of plaintiff's evidence which was overruled. These fourteen assignments raise five propositions, and we will treat these assignments under five groups.

By the first three assignments, it is insisted that there is no material evidence to sustain the verdict or judgment in favor of the plaintiff, and that the Court should have instructed the jury to return a verdict in favor of the defendant.

The second group complains of errors in the Court's charge, and this group consists of assignments nine and ten.

Group number three complains of the Court's refusal to grant certain special requests seasonably offered and this group consists of assignments four to eight inclusive.

Group number four insists that there was misconduct on the part of the jury, and this insistence is made by assignments thirteen and fourteen.

Group number five complains of the verdict being excessive, and this proposition is covered by assignments eleven and twelve.

It is insisted by the first group of assignments that Mrs. Howell was guilty of gross contributory negligence which contributed to the cause of her injury.

(2) It is further insisted that there is no proof, that at the time of the accident, that establishes the fact that the automobile was being operated by an agent, servant or representative of the defendant, or anyone for whose actions the defendant would be liable.

(3) It is further insisted that at the time of the accident Mrs. Williamson, who was operating the automobile, was the agent, servant or representative of Mrs. Howell, and that the alleged family purpose doctrine does not apply to the evidence and facts in this case.

The proof is that Mrs. Williamson, at the time of the accident, was driving the automobile, a Nash Sedan, at the rate of fifty miles or more per hour, that she undertook to drive the car around a sharp curve at this rate, and it was turned over as it went around the curve. The car left the pavement and landed, after turning over, in a yard several feet from the highway.

Mrs. Smoot testified that she tried to turn on the light near the speedometer to see how fast Mrs. Williamson was driving, but this light wouldn't work. A few minutes before the accident Mrs. Williamson passed the car of Mr. Julius Marks, who was also going to Brownsville. Mr. Marks testified that he was driving forty-five miles per hour at the time Mrs. Williamson passed him. Mrs. Williamson was not meeting any car when the accident occurred,

apparently she drove too rapidly on this curve. Mrs. Williamson had the reputation of being a good driver. Her lights were burning. It was after night, and Mrs. Smoot testified that both she and Mrs. Williamson were in a hurry to get back to Brownsville, their homes.

It appears that Mrs. Williamson had free access and use of her husband's car whenever she wanted it. Mrs. Smoot testified that she often rode with Mrs. Williamson, and when she rode with her it was for pleasure.

Mrs. Williamson did not testify, but the evidence shows that she had driven a car for several years, and that she was a competent, experienced driver. The deceased had never owned nor operated an automobile.

It appears that this automobile, which belonged to the defendant was capable of being run at a high rate of speed without vibration to a person in the rear seat, and when being operated at forty-five or fifty-five miles per hour would not be noticeable to the occupants of the car.

It appears that on the day of the accident Mrs. Williamson took her mother to the home of the plaintiff, the son of the deceased, and left Mrs. Howell at plaintiff's home. Mrs. Williamson and Mrs. Smoot then drove to the shopping district of Jackson, did some shopping, took lunch at the New Southern Hotel, visited a picture show, and started for Brownsville, defendant's home, about 5:00 or 5:30 P. M., and in returning to Brownsville they picked up Mrs. Howell at the home where they had left her several hours prior thereto.

The undisputed evidence is that the car was owned by the defendant, registered in his name. We are of the opinion that Mrs. Howell was not guilty of gross contributory negligence. As a guest she had the right to rely upon her daughter and that her daughter driving the car would exercise proper care and precaution. The danger was never obvious or known to Mrs. Howell. Mrs. Smoot testified that the car left the highway and turned over without warning. The accident occurred like a flash.

As a guest Mrs. Howell was under the requirement to observe only that degree of care that an ordinarily prudent person would observe under the circumstances to look out for her safety; ordinarily prudent is a modification of a prudent person. Talley v. Talley, 10 App. Reports, page 602.

The question of contributory negligence was properly submitted to the jury. Dedman v. Dedman, 155 Tenn., 241; N. C. & St. L. Ry. Co. v. White, 158 Tenn., 407; Knoxville Ky. & Lt. Co. v. Van Gilder, 132 Tenn., 489; L. & N. Ry. v. Anderson, 159 Tenn., 55.

The Appellate Courts of Tennessee are committed to "Family Purpose Doctrine," and the owner of an automobile is held liable for damages resulting from its negligent operation by members of his family whom he permits to use it. King v. Smythe, 140 Tenn., 217; Swartz v. Johnson, 152 Tenn., 586; Meinhardt v. Vaughan, 159 Tenn., 272; Lynde v. Browning, 2 Higgins, 262.

"There are undoubted practical considerations in favor of the "Family Purpose Doctrine" since it puts the financial responsibility of the owner behind the car while it is being used by a member of the family who is likely to be financially irresponsible, in furtherence of the purpose for which the car is kept and relieves the injured person from the difficult task of meeting the owner's claim that upon the occasion in question the car was not being used for his pleasure or business." 64 A. L. R., 846.

Mr. Justice Higgins, in Lynde v. Browning, supra, speaking for the Court of Civil Appeals when an automobile was a novelty, and more of a luxury than a necessity as it is today, said:

"We cannot shut our eyes to the fact that automobiles are in a manner dangerous and that they are in a measure a menace to the traveling public. Bearing in mind the number of accident occurring daily and the narrow escapes that pedestrians have and the positive discomfort suffered by many people by reason of the fear of collision from these noiseless but powerful agencies, we do not hesitate to say that the most stringent regulations should be applied to them and that presumptions in case of accident should be against rather than in favor of their owners. The presumption is that the party operating the machine is the agent of the owner. The burden of disproving this presumption is upon him. We are of the opinion that when the head of the family, at the request of the members purchases one of these vehicles to be used indiscriminately for social calls and business errands and pleasure trips in their career of development and enjoyment, he should be held liable for damages occasioned by collision in every instance except those in which the machine is being operated contrary to his wishes and express directions. Knowledge and consent may be implied as well as expressed. Nor do we believe violation is done judicial principles in presuming in all instances with the exception stated that the member of the family operating the machine is acting as the agent or the head of the family in the furtherance of the business for which the head of the family bought it, and that the operation was in the discharge of the actual or supposed purpose of the parent to minister to the needs and comforts of the members of the household."

We are of the opinion that there is evidence to sustain the verdict in this cause, and it was proper to overrule the motion for a directed

512

verdict. It results that the first three assignments in group No. 1 are overruled.

We will next consider the charge of the Court. It is insisted in the 10th assignment that the Court assumed in its charge that Mrs. Williamson was, at the time of the accident, the agent or representative of the defendant. The Court didn't assume this, but stated that it was one of the plaintiff's contentions. Then the Court proceeded to state the plaintiff's contention as set out in the second count of his declaration. However, the Court told the jury that the plaintiff would have to prove this contention by a preponderance of the evidence, and closed the long excerpt complained of in assignment 10 as follows:

"If the plaintiff has failed to show that fact, or if the evidence equally balances as to whether she was driving at that rate of speed, and this was the direct and proximate cause of the injury, then the plaintiff could not recover and you should find for the defendant."

At the conclusion of the Court's charge the defendant submitted eighteen special requests that cover ten pages of the Transcript. The Court gave four of the special requests, and five of the fourteen requests declined have been made the subject of the assignments embraced in group No. 3. In one of these special requests, the Court was asked to charge the jury, that if Mrs. Williamson was using the automobile in which Mrs. Howell was riding, for the sole purpose of conveying Mrs. Howell to get some clothing and had come to Jackson for that purpose and was returning to Brownsville after having made the trip to Jackson for that purpose, the plaintiff cannot recover. This request was properly refused. The facts do not warrant the granting of the special requests. Mrs. Williamson did some shopping while in Jackson, yet she could have brought or conveyed Mrs. Howell to Jackson for the purpose of getting Mrs. Howell's clothing, and Mrs. Howell would have been a guest in defendant's automobile, even though the trip was made for her accommodation.

The other special requests complained of were fully recovered in the general charge, except the special request No. 9, which is made the basis of assignment No. 5.

The Court was asked to charge the jury as follows:

"I further charge you, gentlemen of the jury, that the defendant was under no duty or obligation to furnish or provide a means of transportation for his mother-in-law, and if you find from a preponderance of the evidence that, at the time of the accident and injuries to Mrs. Howell, the automobile was being used by the wife of the defendant at the request of her mother, Mrs. Howell, and solely for the benefit and convenience of Mrs. Howell, and that its

said use was gratuitous on the part of the defendant and an accommodation to Mrs. Howell, or if the evidence as to said matter is evenly balanced, then the plaintiff cannot recover and your verdict should be in favor of the defendant.''

There is no insistence that the defendant was under any duty or obligation to furnish a means of transportation for his mother-in-law. The Trial Judge properly refused this special request.

We have read the charge of the Court, and find it full and fair to the defendant, and there is no error in the charge given or the special requests refused. Assignments two and three are overruled.

We will next consider the assignments relative to the misconduct of the jury. It appears that after the jury returned its verdict four members of the jury gave affidavits in which it is stated, that while the jury was considering their verdict, some juror suggested that probably the defendant carried insurance, and probably the defendant would not have to pay any verdict if one should be rendered against him. It appears that no juror stated as a fact that the defendant did have insurance, neither did any juror state that the defendant did not have insurance.

Here was a son of the deceased suing the son-in-law of the deceased, and on account of the relationship between the parties to this law suit there was some discussion among the jurors. They guessed or supposed, some of the jurors did, that the defendant might have insurance. No juror stated as a fact that the defendant did or did not have insurance, and there is nothing in the record to show that during the trial there was the least suggestion of insurance being carried or not carried. It does not appear that the jurors considered any actual or possible fact outside of the record in arriving at their verdict.

There has been repeatedly stated by our Courts, it is a dangerous precedent to set aside verdicts on affidavits of jurors, and if the practice of hearing these affidavits is liberalized and the Courts depart from the rule of extreme caution, the jury system is likely to prove ineffective. If a verdict is going to be set aside because some juror says that the defendant might have insurance then it would be impossible to get a jury verdict to stand in damage suits arising from automobile injuries, because the custom of carrying liability insurance is now so common that it would be a very ignorant juror who would not know that most business men carry automobile insurance. It seems to us that the affidavits of the jurors in this case are in line with those made in the cases of: Harbin v. Elam, 1 Tenn. App., 501.; Whitfield v. Loveless, 1 Tenn. App., 377.

In the case of Harbin v. Elam, the Court said:—

"Jurors will not be permitted to impeach their verdict and to stultify themselves as was attempted by two jurors in the instant case. Said jurors had sworn that they would try the case fairly, impartially and on the evidence as introduced. Yet when examined as witnesses they say in substance that they did not do that, that they sought to give a verdict against an insurance company that was not a party to the law suit and the name of which they did not know."

We do not think that the affidavits of the jurors show that there was any misconduct on the part of the jury that would vitiate or render their verdict void, or would warrant the trial court or this court to grant a new trial. These assignments are overruled. As to the question of the verdict being excessive, the question of damages for personal injuries or for the death of a person is a matter within the sound discretion of the trial jury and approved by the trial Judge. There is no fixed rule whereby damages for personal injuries, which injuries caused the death of person injured can be mathematically calculated.

The deceased was sixty-four years of age. She was capable of earning a livelihood. She was an experienced, competent practical nurse. She did the sewing and nursing for her children. The deceased suffered extreme pain and mental anguish for several hours from the time of the accident until her death. She was complaining of intense suffering up until a few minutes before her death. Under the facts of this case, we cannot say that the verdict is excessive.

It results that all the assignments of error are overruled and disallowed. The judgment of the lower Court is affirmed. The plaintiff will recover of the defendant the amount of the judgment rendered in the lower Court, with interest thereon from the date of its rendition, and all the costs of the case for which execution will issue. Execution will issue against the defendant and his surety on appeal bond for the costs of the appeal.

Heiskell and Senter, JJ., concur.