VIRGIL LITTRELL, Plaintiff in Error,

*v.*

GLADYS SMITH, by Next Friend, JOHNNY SMITH, Defendant in Error.

(*Nashville,* December Term, 1957.)

Opinion filed March 4, 1958.

HARWELL & BOSTON, Lawrenceburg, for plaintiff in error.

HOWARD P. FREEMON, Lawrenceburg, for defendant in error.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

We granted *certiorari* in this case solely for the discussion of one point which is raised by and is determinative of assignments of error Nos. 5, 6 and 7.

Gladys Smith, while riding on the front seat of an automobile being driven by her husband, Johnny Smith, was injured when Johnny Smith drove into the rear of a truck owned by Lawrence County and being driven by Virgil Littrell. The jury awarded her a $3,500 recovery against Littrell.

A new trial was sought on the ground that, by reason of extraneous influence exerted on the jury, they, or at least a part of them, were influenced to render a larger verdict than they otherwise would have done. This is the predicate for assignments of error 5, 6 and 7.

On the motion for new trial, two of the jurors, N. F. Smith and A. A. Smith and one Walter Ray testified. Then a stipulation was entered into between counsel for the purpose of shortening the record for appeal and same is made a part of the record; it is stipulated also that another one of the jurors, E. C. McDonald, if placed on the stand, would have testified to the same effect as the two Smiths; it is further stipulated that the two Smiths and Walter Ray testified as follows:

"N. F. Smith testified in open court that he was a member of the jury that tried this case and that during the noon hour Mr. Walter Ray, who was also a juror for that term of court but was not a juror on said trial, approached him and Mr. A. A. Smith and E. C. McDonald, who were jurors empaneled and trying said case, and informed them that Lawrence County had insurance on the truck and that it would not cost Mr. Littrell anything for them to give a judgment for the plaintiff. Mr. Smith testified that the question of insurance was also discussed in the jury room while deliberating on the case, and while he decided the case on the evidence presented at the trial, he would not have given as large a judgment unless he knew that the insurance company would have to pay it. Mr. Smith testified that he decided the case according to the evidence presented at the trial because he thought to give about one-half of what they were asking for and the rest was a compromise. Mr. Walter Ray testified that he had been a member of the jury in a previous term of court in which Mr. Harwell, one of the attorneys for the defendant in this case, had a similar case at the bar and that he had learned at that time that Lawrence County had insurance on the trucks * * * the court was of the

opinion that Mr. Walter Ray's statements to the jurors were not made with any guilty intent to influence them in their verdict, but was such information that they should not have received. * * *''

The Court of Appeals cited *Harbin v. Elam,* 1 Tenn. App. 496, where the jury generally discussed the probability of insurance but no juror knew or undertook to state whether the defendant did or did not carry insurance and this was held not a ground for a new trial. Obviously, this case is not in point on the facts here. Next, the opinion refers to *Williamson v. Howell,* 13 Tenn.App. 506, 507, where it was held that the jurors would not be allowed to impeach their verdict and stultify themselves by stating that they did not try the case as they stated on oath that they would do, and further that it appeared that the mere discussion of insurance was not sufficient to justify setting aside the verdict. The Court of Appeals then referred to *Waller v. Skelton,* 31 Tenn.App. 103, 212 S.W.2d 690, which cites *McAlester v. Monteverde,* 22 Tenn.App. 14, 115 S.W.2d 257, in which the Court said that in all the cases examined by the Court in which new trials were granted because information concerning insurance and other outside matters was conveyed to a juror or jurors, the information was communicated to the entire jury, was material to the issue being tried, and was favorable to the verdict returned. The Court of Appeals then states, ''The record does not show whether or not the information about insurance, given to the two jurors who testified, was repeated to the rest of the jury.''

Reference was then made to *Thomason v. Trentham,* 178 Tenn. 37, 154 S.W2d 792, 138 A.L.R. 461.

We are of opinion that none of the cases above cited is controlling on the facts in this case. Examination of *Thomason v. Trentham,* supra; *Hime v. Sullivan,* 188 Tenn. 605, 616, 221 S.W.2d 893; *Waller v. Skeleton,* supra; *Union Transfer Co. v. Finch,* 16 Tenn.App. 293, 300, middle of the page, 64 S.W.2d 222, will disclose that in all of these cases it appeared clearly that the jury did not consider the improper evidence in arriving at the verdict.

We are of opinion that the instant case is controlled by *Marshall v. North Branch Transfer Co.,* 166 Tenn. 96, 59 S.W.2d 520, in which it is held (1) that a juror cannot impeach his verdict by his affidavit that he assented to a verdict for reasons other than the evidence and the law submitted; (2) however, where improper conduct of the jury is otherwise shown, the affidavit of jurors that misconduct influenced them may properly be considered on a motion for a new trial; it appeared in that case that the jury during the deliberations took into consideration their own knowledge that the defendant carried liability insurance. Held, a new trial was warranted. On page 100, of 166 Tenn. last full paragraph, on page 521 of 59 S.W.2d, the Court said:

"The case before us involves more than mere comment by the jury on the fact of insurance."

In the instant case, since it was made to appear by the affidavit of Walter Ray, who was not a member of the jury in this case, that at least two of the jurors, if not all of them, were guilty of improper conduct, it was, therefore, under the authority of the last above cited case proper for the Court to consider the affidavits of the members of the jury who testified for the purpose of

showing how that improper conduct affected their verdict.

■ We think the fair inference from the stipulation is that the information given to the two jurors who testified was repeated to the rest of the jury but in any event, it is certainly clear that N. F. Smith and E. C. McDonald agreed to a larger verdict by reason of this information. The result is that the verdict was not the verdict of the 12 jurors based upon the law and evidence submitted to them in the courtroom, but was a larger verdict than would otherwise have been rendered by at least two of the jurors and, as we see it, by all of them, by reason of this extraneous and improper knowledge given to them; the effect on the defendant was no different from what it would have been if the verdict had been unequivocally corrupt and it is not such misconduct in a jury trial as can be condoned under the remedial Act of 1911 T.C.A. secs. 27-117 or under any other process of reasoning.

We are at a loss to see how the trial judge could find that Mr. Ray's statements to these jurors were not made with guilty intent to influence them in their verdict. The record shows he was an experienced juror, having served at least at a previous term of court. Any person of average intelligence who has had jury service must be presumed to know that such conduct was an improper interference with the administration of justice. This man ought to have been held in contempt of court.

The several assignments on this point are sustained, the judgment of the Court of Appeals and of the trial court is reversed and the cause is remanded for a new trial, at the costs of the defendant in error Gladys Smith.