Bobby WILSON, Appellee,

v.

David RENFROE and Audie
Renfroe, Appellants.

Court of Appeals of Tennessee,
Western Section.

May 21, 1976.

Certiorari Denied by Supreme Court
Aug. 16, 1976.

Hewitt P. Tomlin, Jr., James D. Todd,
Jackson, for appellants.

Joe C. Davis, Lexington, for appellee.

NEARN, Judge.

Bobby Wilson sued Audie and David
Renfroe for personal injuries and property
damage allegedly caused by the negligence
of David Renfroe while driving the car of
his father Audie Renfroe. The jury award-
ed plaintiff the sum of $25,000 and defend-
ants appeal.

By their Assignments of Error, defend-
ants claim that the Trial Judge erred in (1)
failing to exclude certain evidence on the
ground of irrelevance, (2) failing to direct a

verdict for the defendants at the close of all the proof on the ground that there was no material evidence to support a verdict for the plaintiff and (3) failing to set aside the verdict rendered on the ground of jury misconduct.

There were no witnesses to the actual collision other than the drivers of the vehicles. Plaintiff sustained head injuries in the collision and testified that his only memory of the occurrence was that he was driving along and was hit from the rear. A plaintiff's witness, Mrs. Davis, testified, that minutes before the accident she was chopping cotton in a field adjacent to the highway about one mile from the accident when she observed plaintiff turn around and proceed in a northwardly direction down the road at about 20 or 25 miles per hour. Then, as plaintiff went out of sight defendant was observed going in a northwardly direction "—going pretty fast, about 60, 65 something like that I'd say—he almost ran off the road, and his car was kind of fishtailing." The defendant's vehicle then passed from view, and Mrs. Davis did not see the collision.

Defendant testified that plaintiff was not proceeding northwardly down the road at the time of the collision but was backing up off the road just beyond the crest of a hill and was first observed by defendant in this position when defendant topped the hill and therefore, defendant claims, he was unable to avoid the collision. On cross-examination defendant denied any erratic driving on his part in the vicinity about the time of the collision.

■ Counsel for appellant insists that the testimony of Mrs. Davis should not have been introduced as the testimony was of events so utterly remote as to be of little or no pertinent value to the issues in the case; counsel cites *Whitfield v. Loveless* (1925 M.S.) 1 Tenn.App. 377; *Mason v. James* (1935 M.S.) 19 Tenn.App. 479, 89 S.W.2d 910, et al.

Counsel for appellee does not argue with the cited cases but contends that their ultimate holding is that the question of remoteness is dependent on the facts of each case

and rests largely in the sound discretion of the Court. See also *Ritter v. State* (1970) 3 Tenn.Cr.App. 372, 462 S.W.2d 247.

We concur in counsel for appellee's construction of the cases and believe that under the circumstances of this case, the Trial Judge correctly exercised his discretion in admitting the testimony of Mrs. Davis. That testimony, due to its proximity of time and place, could tend to corroborate the testimony of plaintiff that he was travelling northwardly and was struck from the rear and could, because of the time sequence, tend to discredit defendant's testimony to the effect that plaintiff had stopped in the road and was backing up into an intersecting road at the time of the collision.

■ In cross-examination, David Renfroe was asked if he had not run off the road in front of the house of Mr. Wilson (plaintiff's uncle) and torn down some bushes before the accident. The defendant denied the event. On rebuttal Mr. Wilson testified that he lived about a mile and one-half from the accident scene, but on a different road, and that about 30 or 40 minutes prior to the accident while he was plowing his field, the defendant ran off the road in front of Wilson's property. Wilson testified that the Renfroe vehicle "—hit that rock and went in that ditch and got in some old roses. Before I got there he left there like a bullet—."

It is argued that testimony of the "running off the road" event is too remote in time and distance to be admissible, and even if not, such testimony, if admissible at all, should have been introduced as part of the plaintiff's proof in chief. Appellant contends that it was error for the Trial Judge to admit such in rebuttal.

The "running off the road" event may or may not be too remote to qualify as proper evidence but, since the question concerning the event was asked on cross-examination without objection and the event was denied by the defendant, we believe it was admissible as rebuttal on the issue of credibility, which issue was of considerable importance in the case.

The first Assignment of Error is overruled.

■ What we have previously said concerning the first Assignment of Error obviates the necessity of any further discussion regarding appellant's contention that there is no material evidence to support a verdict as to liability. However, it is also insisted that there is no material evidence to support a verdict in the amount of $25,000.00. There is. Plaintiff's proof shows that he suffered a blow to the head which required the insertion of a plate and an impairment of vision and incurred medical expenses in the amount of $6,030.76. Further, there is proof that the effects of the injuries are permanent.

The second Assignment of Error is overruled.

■ The alleged jury misconduct is that "there was substantial and blatant discussion about liability insurance in the case, and the discussion of liability insurance and its effect on the defendant materially affected the verdict and resulted in great prejudice to the defendants."

Neither during plaintiff's proof nor defendants' proof did the presence of or lack of insurance by either party enter into the trial. During the presentation of proof, neither counsel nor witness used the word "insurance." However, during *voir dire* examination the jurors were asked about possible relationships with liability insurance companies.

In support of the charge of misconduct, counsel for defendant filed the affidavits of two jurors. In response to that, counsel for plaintiff obtained the counter affidavit of nine jurors. At the hearing on the motion for new trial, the two jurors who signed the affidavits presented in behalf of the defendant gave oral testimony, but that testimony was mostly a repetition of the contents of their affidavits. Counsel for plaintiff did not adduce proof at that hearing, but elected to stand on the contents of his affidavits as filed.

The affidavit of Ruth Ann Lindsey is to the effect that "all" jurors agreed the plaintiff's car was crosswise in the road when struck by the Renfroe car; that "all" jurors agreed that Wilson was guilty of negligence; and that affiant and "some" of the jurors were convinced that Wilson and Renfroe were equally negligent in causing the accident. Further, the "members of the jury" did not understand the law and affiant "first voted 'no' to returning this verdict." But affiant was advised by "one member" of the jury that unless affiant went along with the verdict, they would be there indefinitely. Since affiant had a sick child at home and "for other personal reasons" affiant voted to return a verdict with which she did not agree. Further that "When the judge asked each juror if that was his verdict, I hesitated and then said 'yes'. I wanted to, and almost did, tell the Judge that I did not agree with the verdict but I did not tell him since I did not know what to do." The affidavit also alleges that the subject of insurance was mentioned many times in the jury deliberations and that "I am convinced that the jury would not have returned this verdict if there had not been the discussion about insurance. All of the jurors believed that an insurance company would pay the verdict that we returned."

The affidavit of juror Carol Jennings closely parallels that of Ruth Ann Lindsey with the addition that

"I, along with two other jurors, did not think that the others understood the instructions given by the Judge. However, I let the others talk me into voting for a verdict of $25,000.00. I did not at that time, and I do not now, think that was the proper verdict.

"I am convinced beyond any doubt that the jury believed the judgment would be paid by insurance. The topic was discussed at length and everyone based his decision upon that fact. If we had not considered insurance, the verdict would not have been rendered."

However, Carol Jennings does not give any reason whatsoever why she answered "yes" to the Judge's query when the jury was polled.

The counter affidavit of nine other jurors is to the effect that they reached their verdict solely from the evidence heard from the witness stand and the charge of the Court and that each considered David Renfroe the proximate cause of the accident and the injuries sustained. The affidavit further provides:

"That there was no evidence introduced on the trial of the case to the effect that the defendants had automobile insurance to protect them, and in so far as affiants know no juror knew whether or not the defendants had such insurance, and the verdict of the jury was certainly not based on the fact that the defendants had insurance, if in fact they did have.

"Affiants further state that the matter of insurance may have been casually mentioned in the jury room, but no one knew whether or not the defendants had insurance, and no verdict was based on such."

We note that we have the affidavits of eleven jurors. We assume the twelfth was either unavailable or took the position of "a pox on both your houses" and declined to be further involved.

Counsel for appellant in his appellate brief states "___Defendants respectfully assert that the Court erred in refusing to grant a new trial upon the basis that the jury had improperly considered the fact that Defendants had liability insurance." If such assertion be an admission that the defendants are protected by liability insurance, it is the first time that such "fact" has been made known to anyone in this record, including the Trial Judge, the jury and this Court. None of the affidavits indicate a knowledge of such "fact" on the part of the jury. The affidavits do indicate that the matter of insurance was mentioned, but to a disputed degree and significance.

The affidavit of Ruth Lindsey is to the effect that insurance was discussed at length in the jury room. However, a fair reading of her affidavit impels the conclusion that such discussion affected her verdict not one iota. Ruth Lindsey gives her reason for voting "yes" as, "I had a very small child who was sick the night before and I knew that I could not stay into the night or come back the next day. Therefore, for other personal reasons and the fact that I had a sick child I voted to return a verdict with which I did not agree." It would seem that according to Ruth Lindsey she would have voted either "yes" or "no", whichever would be required to end the matter rather than be further delayed.

A fair reading of the affidavit of Carol Jennings is to the effect that Carol Jennings was affected by the insurance discussion in the jury room.

The affidavit of the nine is that there "may" have been such discussion but that it did not affect their verdict. We therefore conclude that mention or discussion of insurance was made during jury deliberation.

Then, at this point the question is whether the mention or discussion of insurance in jury deliberations, *sua sponte*, without the matter having been mentioned during trial, entitles a party to a new trial when one juror swears such discussion affected his or her verdict?

Counsel for appellant relies strongly upon the case of *Marshall v. North Branch Transfer Co.* (1932) 166 Tenn. 96, 59 S.W.2d 520 as authority for us to answer the question in the affirmative. In *Marshall* the Supreme Court stated:

"[1] A juror will not be permitted to impeach a verdict by his affidavit that he assented to it because of facts or reasons other than the evidence and law submitted in open court. *Hughes v. State*, 126 Tenn. 40, 91–94, 148 S.W. 543; *Lee v. State*, 121 Tenn. 521, 553, 116 S.W. 881, and cases therein cited.

"[2] We think, however, that when improper conduct on the part of the jury is otherwise shown, the affidavits of jurors that such misconduct influenced or induced them to agree to the verdict may and should be considered by the court or judge in determining what effect should be given to the misconduct complained of. Particularly is this true in view of the statutory and procedural rule, that a new

trial will not be ordered by an appellate court for any error in procedure, unless it shall affirmatively appear that the error complained of has affected the results of the trial."

Based on the affidavits in that case, the Supreme Court granted a new trial.

The two affidavits of Lindsey and Jennings, in so far as they emphasize the averred amount of discussion in the jury room concerning insurance, are similar to those discussed in the *Marshall* Opinion, supra. However, we believe *Marshall* is distinguishable from the instant case. In *Marshall* four affidavits averring jury misconduct regarding insurance discussions were filed. (Four just happens to be the number of affidavits filed. We do not intimate that the number of affidavits has any particular significance as the Courts will not play a "numbers game" with jury affidavits.) No counter affidavits were filed. The affiants were not orally examined at the hearing on the motion for new trial. Nothing was done by affidavit or otherwise to offset or contradict the statement of facts made in the four affidavits. Therefore, as noted by the *Marshall* Court, "We have no discretion therefore but to accept the affidavits as correctly representing the proceedings in the jury room." In this case counter affidavits have been filed. A jury verdict was rendered in this case for the plaintiff. The jury individually expressed their satisfaction with the verdict. Later, some jurors aver that their verdict individually as well as collectively was improperly given. Other jurors aver to the contrary.

Since counter affidavits are filed we cannot presume that those "facts" averred or testified to which are contrary to the verdict and the counter affidavits are true. We must presume that such controverted averments are not true. Otherwise, every verdict will be subject to a later trial by affidavits with a resulting opportunity for great mischief.

The only significant matter not controverted by the counter affidavits is that mention of insurance was made in the jury room. Had this been the only uncontro-verted evidence in *Marshall*, supra, the Court would not have reversed in that case for it was observed: "The case before us involves more than mere comment by the juror on the fact of insurance." We are of the opinion that the ruling in *Marshall* constitutes no ground for reversal of this case. Also compare *Littrell v. Smith* (1957) 203 Tenn. 282, 311 S.W.2d 204, wherein extraneous evidence was received by the jury from a third party. For a case more analogous on the facts see *Harbin v. Elam* (1925 W.S.) 1 Tenn.App. 496.

We hold the Trial Judge did not err in failing to set aside the jury verdict.

The result is the judgment below is affirmed with costs of appeal adjudged against appellant and surety.

CARNEY, P. J. and MATHERNE, J., concur.