# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### OCTOBER 13, 2009 Session

## ARLENE R. STARR v. PAUL B. HILL, SR., and PAUL B. HILL, JR.

### Direct Appeal from the Circuit Court for Shelby County
No. CT-006836-03      James F. Russell, Judge

_____

### No. W2009-00524-COA-R3-CV - Filed February 18, 2010

_____

After Plaintiff was injured in a car accident, she filed suit against the minor who was driving the other vehicle and against the minor's father, alleging that he was vicariously liable for the acts of his son pursuant to the family purpose doctrine. Father moved for summary judgment, claiming that the undisputed facts showed that the family purpose doctrine was inapplicable as a matter of law. Plaintiff moved for partial summary judgment, claiming that the family purpose doctrine was applicable as a matter of law. The trial court denied Plaintiff's motion for partial summary judgment and granted summary judgment to Father. Plaintiff appeals. We reverse and remand for entry of an order granting Plaintiff's motion, as we find the family purpose doctrine applicable to this case.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

S. Newton Anderson, Memphis, Tennessee, for the appellant, Arlene R. Starr

Kirk A. Caraway, Heather W. Fletcher, Memphis, Tennessee, for the appellee, Paul B. Hill, Sr.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On December 24, 2002, Paul B. Hill, Jr. ("Son") was involved in an automobile accident in which Arlene R. Starr ("Plaintiff") was seriously injured. Son was driving a 1985 Mercedes Benz that was titled to and insured by Paul B. Hill, Sr. ("Father"). Father had purchased the Mercedes for Son to drive when he obtained his driver's license on his sixteenth birthday, which was approximately one month before the accident.

Plaintiff filed suit against Father and Son, asserting that Father was vicariously liable for the negligent actions of Son under the family purpose doctrine. Father filed a motion for summary judgment, contending that the family purpose doctrine was inapplicable. Plaintiff then filed a motion for partial summary judgment, claiming that the family purpose was applicable as a matter of law. The trial court ultimately denied Plaintiff's motion for partial summary judgment and granted summary judgment to Father, finding the family purpose doctrine inapplicable. Plaintiff non-suited her claim against Son, and the trial court entered a revised order granting summary judgment to Father. Plaintiff timely filed a notice of appeal.

### II. ISSUES PRESENTED

On appeal, Plaintiff contends that the trial court erred in denying her motion for partial summary judgment and in granting summary judgment to Father. For the following reasons, we reverse the decision of the circuit court and remand for entry of an order granting Plaintiff's motion for partial summary judgment.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). Assuming that the facts being considered are found in the record and admissible in evidence, the next inquiry is whether a factual dispute actually exists. *Id.* at 514. "If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine

question of fact exists." *Id.* (citing *Martin*, 271 S.W.3d at 84; *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993)). "If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then no material factual dispute exists, and the question can be disposed of as a matter of law." *Id.* (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999)). Still, not every factual dispute requires the denial of a motion for summary judgment. *Id.* To warrant denial of a motion for summary judgment, the factual dispute must be material, meaning "germane to the claim or defense on which the summary judgment is predicated." *Id.* (citing *Eskin v. Bartee*, 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)).

When the moving party does not bear the burden of proof at trial, it may make the required showing and shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[T]o negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Martin*, 271 S.W.3d at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). On the other hand, "a plaintiff who files a motion for partial summary judgment on an element of his or her claim shifts the burden by alleging undisputed facts that show the existence of that element and entitle the plaintiff to summary judgment as a matter of law." *Hannan*, 270 S.W.3d at 9, n.6. "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin*, 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Martin*, 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion – that the moving party is entitled to a judgment as a matter of law." *Green*, 293 S.W.3d at 513 (citing *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002)).

## IV. DISCUSSION

The family purpose doctrine was first adopted in Tennessee in ***King v. Smythe***, 204 S.W. 296 (Tenn. 1918), and it is now "firmly established in this state." ***Camper v. Minor***, 915 S.W.2d 437, 447 (Tenn. 1996). Under the family purpose doctrine, "the head of a household who maintains a motor vehicle for the general use and convenience of the family is liable for the negligence of any member of the family driving the vehicle, provided the driver received express or implied consent." ***Id.*** In ***Camper***, the Court recognized the numerous justifications cited by Tennessee courts in support of the family purpose doctrine:

> First, the doctrine is based in part on the presumption that the child is subject to parental control. *Adkins v. Nanney*, 169 Tenn. 67, 82 S.W.2d 867 (1935). By imposing vicarious liability, the courts hoped to provide parents with an incentive to ensure that the actions of their children conform to the requirements of law. As stated by the *King* court, "[i]f owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities." *King*, 204 S.W. at 298. Second, the courts justified the doctrine on a somewhat modified form of the "enterprise theory." As one court explained in an unpublished opinion in 1993, "one who furnishes and maintains the vehicle for the convenience of his family members is regarded as making such use his own business so that *the family member driver is furthering the owner's own purpose*." (emphasis added). The courts reasoned that because the head of the household was benefiting from such activity, he or she ought to be liable for the accidents that will inevitably result. Finally, the doctrine was thought important in providing innocent victims "substantial justice." As this Court explained in *King*, [204 S.W. at 298]

> > [A]s a matter of practical justice to those who are injured, we cannot close our eyes to the fact an automobile . . . is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can justice be attained. A judgment for damages against an infant . . . would be an empty form.

-4-

*Camper*, 915 S.W.2d at 447.

The family purpose doctrine applies when two requirements have been satisfied: (1) "the head of the household must maintain an automobile for the purpose of providing pleasure or comfort for his or her family," and (2) "the family purpose driver must have been using the motor vehicle at the time of the injury in furtherance of that purpose with the permission, either expressed or implied, of the owner."[1] *Camper*, 915 S.W.2d at 447 (citations omitted). On appeal, the parties dispute whether Father was the head of the household, for purposes of the family purpose doctrine, and whether he purchased the Mercedes for the purpose of providing pleasure or comfort to his family. Both parties contend that the undisputed facts entitle them to judgment as a matter of law.

### A. Head of Household

The automobile accident at issue occurred on December 24, 2002. Son's parents had separated less than four months earlier, on August 31, 2002, when Father moved out of the marital residence and temporarily moved into his parents' home. Son continued to live with his mother and younger sister in the marital residence. Son's parents were divorced by decree on October 7, 2002. The divorce decree provided that the children's mother would be their primary residential parent, and pursuant to the parenting plan, Father would have parenting time with the children every other weekend and overnight on Wednesdays, in addition to various holidays. The plan further provided that each parent would make decisions regarding the day-to-day care and control of the children while the children were residing with that parent, that certain decisions would be made jointly, and that their mother must consult with Father on all major decisions.

The marital dissolution agreement also required Father to provide an automobile for each of his children when they reached the age of sixteen, with the vehicle to be chosen at Father's discretion. When Son turned sixteen on November 25, 2002, Father provided the Mercedes for him to drive.

Although Father did not intend to establish a residence at his parents' house, he was still living with them on December 24, 2002, at the time of Son's accident. In the two months

---

[1] "[T]he plaintiff does not have to prove negligence on the part of the head of the household in order to recover from him or her when the plaintiff is injured by the tortious conduct of the driver." *Camper*, 915 S.W.2d at 448 (citing *Prosser and Keeton on the Law of Torts*, § 73, at 524-27 (5th ed. 1984)). The head of the household is held liable "not because of any negligent act committed by that person," but because, as a matter of public policy, the actions of the driver are imputed to the head of household due to the agency relationship that is deemed to exist between him or her and the driver. *Id.*

since the divorce, the parties had not strictly enforced the provisions of the parenting plan and had allowed the children to visit Father whenever they pleased. During his deposition, Father testified that he and the children would play golf together or go to dinner on the weekends, but that Son only stayed overnight at Father's parents' house once, and the daughter stayed there twice. Son testified that he had gone to see Father at his parents' house "a few times."

Father testified that his ex-wife had always handled the "decision-making in regard to the children" during their marriage, and that the situation did not change after the divorce. Father acknowledged that, pursuant to the parenting plan, he had the right and ability to have control over the children on any of his scheduled days of residential parenting time if he "felt like exercising it." In other words, according to Father, it was not that he lacked the right or ability to exercise control over the children, he was "just simply not exercising the control."

Neither parent had established any rules for Son regarding his use of the Mercedes. Father said that he relied on Son's mother to set the parameters of Son's driving privileges. Son initially testified that most decisions were made for him by his mother and Father. However, when asked by his (and Father's) counsel whether his mother made day-to-day decisions for him, Son responded, "Yes, sir." Son said he was not aware of the parenting plan's provisions requiring that certain decisions be made jointly, but he said, "he's my father. I just assumed he would always have the right."

Although it is clear that the family purpose doctrine applies where "the head of the household" maintains an automobile for the purpose of providing pleasure or comfort for "his or her family," *Camper*, 915 S.W.2d at 447, Tennessee courts have not attempted to define the phrase "head of the household" but have decided the issue depending on the facts and circumstances of each case. A child's age is not determinative, as "the 'family purpose doctrine' applies to an adult as well as to a minor." *Boles v. Russell*, 252 S.W.2d 801, 803 (Tenn. Ct. App. 1952). When the Tennessee Supreme Court adopted the family purpose doctrine in *King*, 204 S.W. at 298, it noted that "[t]he father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others."

In *Johnson v. Steverson*, No. W1999-00627-C0A-R3-CV, 2000 WL 1285282, at *2 (Tenn. Ct. App. Aug. 30, 2000), this Court concluded that a family can have more than one "head of household" for purposes of the application of the family purpose doctrine. In that case, the father was physically incapacitated and terminally ill, but mentally fit. *Id.* The mother claimed that she was the head of the household due to the father's incapacitation. However, because he was the child's father and the co-owner of the vehicle, we concluded that the father had "both the legal and parental authority" to grant or deny the son permission

to use the vehicle. *Id.* As the father and mother were "partners in marriage, partners in the rearing of their children, and co-owners of [the vehicle]," we classified them both as heads of the household. *Id.*

In *Hill v. Smith*, 222 S.W.2d 207, 207-208 (Tenn. Ct. App. 1949), the Court applied the family purpose doctrine to hold a mother liable when her child was driving her car, even though the father was considered the head of the family. The Court quoted the justifications for the family purpose doctrine expressed in *King*, emphasizing the statement that "If owners of automobiles are made to understand that they will be held liable for injury to the person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities." *Id.* at 208-209.

On appeal, Father contends that he cannot be considered the head of the household for purposes of the family purpose doctrine because he did not live with Son at the time of the accident. It is undisputed that Father had moved out of the marital residence nearly four months earlier and was living with his parents until he could establish a separate residence. Father points out that in *Thurmon v. Sellers*, 62 S.W.3d 145, 156 (Tenn. Ct. App. 2001), the court generally described the family purpose doctrine as "a court-created legal fiction by which the owner of an automobile is held vicariously liable when the car is negligently driven by *a member of the immediate household*." (emphasis added). Father claims that it can be presumed from this statement that the car owner must live with the driver at the time of the accident in order to be liable under the family purpose doctrine. Father further argues that because he did not have residential parenting time with Son pursuant to the parenting plan on the day of the accident, he cannot be considered the head of household.[2]

We recognize that in most cases where Tennessee courts have applied the family

---

[2] On December 24, 2002, the day of the accident, Mother had residential parenting time according to the parenting plan schedule. The parenting plan provided that in even years, Mother was allowed residential parenting time with the children during winter break from December 18 until December 25 at noon, and Father would have residential parenting time from December 25 at noon until January 1. Despite the plan, however, on the night of December 24, following the accident, the children attended a family function with Father. It is our opinion that the parties' residential parenting time schedule does not control the issue of whether Father was a head of the household. The applicability of the family purpose doctrine should not rise or fall depending upon whether the accident occurred on a certain day of the week, or in an even or odd year.

purpose doctrine, the head of the household resided with the driver of the vehicle.[3] However, that does not necessarily mean that if parties maintain more than one residence, application of the doctrine is precluded. We find no Tennessee authority addressing whether a parent must actually reside in the same dwelling as the driver at the time of the accident in order to be considered a head of the household.[4] It appears that no Tennessee appellate court has considered whether an alternate residential parent can be considered a head of the household for purposes of the family purpose doctrine. However, other courts have addressed these issues.

In **Herman v. Magnuson**, 277 N.W.2d 445, 459 (N.D. 1979), a father cited various dictionary definitions of the terms "family" and "household" in support of his position that he could not be considered the head of his son's household for purposes of the family car doctrine if he did not reside under the same roof as the son. The Supreme Court of North Dakota concluded that this argument was too narrow, explaining that the totality of the circumstances surrounding the parties' relationship must be considered in order to be consistent with the agency basis of the family purpose doctrine. *Id.* at 460. "While the maintenance of a single physical abode is important, it is but one indicium of family membership." *Id.* The Court explained that other jurisdictions had "looked beyond the important but not dispositive factor of maintenance of separate physical abodes and delved into the relationship between the operator of the vehicle and members of the family of the alleged head of the household." *Id.* The determinative factor was "whether or not the operator of the vehicle had severed his or her relationship with the family of the head of the household so as to terminate the fictitious agency relationship upon which the 'family car' doctrine is premised." *Id.*

In **Cox v. Rewis**, 429 S.E.2d 314, 316 (Ga. Ct. App. 1993), the Georgia Court of Appeals applied the family purpose doctrine where a son, whose parents were divorced, lived with his father but was visiting his mother and wrecked her vehicle. The Court stated, "Where

---

[3]    In **Henley v. Dale**, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *16 (Tenn. Ct. App. Jan. 28, 2002), the Court found the family purpose doctrine applicable to hold a father liable for his son's negligence even though the father's two sons were residing with their grandmother at the time of the accident because the father and mother were going through a divorce. The Court stated that the jury could have rationally concluded, among other things, that the father was the head of the household. However, it is not clear from the opinion whether the parties actually raised the "head of household" issue on appeal.

[4]    In **Faulkner v. Skelton**, No. W1999-00621-COA-R3-CV, 2001 WL 13230, at *4 (Tenn. Ct. App. Jan. 5, 2001), the court recognized that "other courts have held that a parent of the driver of a vehicle who furnishes the vehicle, but does not live with the driver, may be deemed the head of the driver's household under the family purpose doctrine." (citing *Alexander v. Kendrick*, 213 S.E.2d 911, 914 (Ga. Ct. App. 1975)). However, the court declined to extend that conclusion to the facts of the case before it where the alleged head of household was a *non*-parent who did not reside with the driver.

the parents have been divorced, with the non-custodial parent furnishing an automobile to the child, the family purpose doctrine is applicable."[5] *Id.* (citing *Esco v. Jackson*, 185 Ga. App. 901(1), 366 S.E.2d 309 (1988); *Alexander v. Kendrick*, 134 Ga. App. 249, 251(4), 213 S.E.2d 911 (1975)).

We find these courts' reasoning persuasive, as a broader interpretation of "head of household" is necessary in order to effectuate the policies behind the family purpose doctrine in light of the realities of our modern society. We likewise conclude that the existence of a single physical place of abode is but one factor to consider when determining whether the person who maintained the vehicle is a head of the household for purposes of the family purpose doctrine, and the maintenance of separate residences does not automatically preclude a finding that the family purpose doctrine applies. Therefore, we reject Father's contention that the family purpose doctrine is inapplicable as a matter of law due to his separate residence.

Next, Father claims that "to hold [him] liable for the acts of his son would violate the purpose behind the family purpose doctrine, which is to hold the person with the most control and influence over a family responsible for his or her child's actions." We recognize that "[o]ne of the grounds upon which the family purpose doctrine is based is the fact that the child is subject to parental control." **Gray v. Amos**, 869 S.W.2d 925, 927 (Tenn. Ct. App. 1993) (citing *Adkins*, 82 S.W.2d at 867). But the doctrine has other justifications as well, as the court explained in **Camper**, 915 S.W.2d at 447 (citing *King*, 204 S.W. at 298):

> [A]s a matter of practical justice to those who are injured, we cannot close our eyes to the fact an automobile . . . is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can justice be attained. A judgment for damages against an infant . . . would be an empty form.

In other words, the family purpose doctrine "puts the financial responsibility of the owner

---

[5] In another case involving divorced parents, **Bell v. West**, 284 S.E.2d 885, 887 (W. Va. 1981), the West Virginia Supreme Court concluded that a son's relationship with his non-custodial father was too attenuated to support application of the family purpose doctrine. Following the parents' divorce, the son had lived with his mother for eight years. Then, two years before the accident, he quit school and moved to another state, apparently on his own. He had only visited his family in West Virginia three times during the past two years. Therefore, the Court affirmed an award of summary judgment to the father. The facts of this case are clearly distinguishable.

behind the car while it is being used by a member of the family who is likely to be financially irresponsible, in furtherance of the purpose for which the car is kept . . . ." **Williamson v. Howell**, 13 Tenn. App. 506 (1931).

Moreover, Father *had* legal and parental authority to grant or deny Son permission to use the vehicle, if he chose to exercise it.[6] Father had authority as Son's parent, with legally enforceable residential parenting time and decision-making rights pursuant to the recently entered divorce decree. He also had sole discretion to choose the vehicle provided to Son. Furthermore, Father was the sole owner and insurer of the vehicle. Father contends that he was not authorized to deny Son permission to use the Mercedes because he was bound by the marital dissolution agreement to procure an automobile for Son when he turned sixteen. However, the parenting plan provided that the mother and Father would consult on all major decisions involving the children. By imposing vicarious liability through the family purpose doctrine, "the courts hoped to provide parents with an incentive to ensure that the actions of their children conform to the requirements of law." **Camper**, 915 S.W.2d at 447. Father cannot escape liability under the doctrine simply because he did not exercise his authority over Son's driving privileges in the few short weeks that he drove the vehicle prior to the accident. *See* **Thurmon**, 62 S.W.3d at 158 (finding the family purpose doctrine applicable although the father did not restrict his son's use of the vehicle). In short, we reject Father's contention that he lacked authority to control Son's use of the Mercedes that Father owned and insured.

For the aforementioned reasons, we reject Father's assertions and conclude that the undisputed facts show the existence of this element of the family purpose doctrine – that Father was a head of the household for purposes of the family purpose doctrine.

### B. The Purpose of Providing Pleasure or Comfort to the Family

Although we have determined that Father is a head of the household for purposes of the family purpose doctrine, we must still consider whether he provided the vehicle for a family purpose, or, in other words, whether he maintained it "for the purpose of providing pleasure or comfort for his or her family."[7] Father contends that the family purpose doctrine

---

[6] For the family purpose doctrine to apply, it is not necessary that the parent have specific knowledge that the child is using the vehicle at the time of the accident. *See, e.g.,* **Henley**, 2002 WL 100402, at *15 (finding the family purpose doctrine applicable when a son wrecked a vehicle during "an early morning, drunken joyride," of which the father and owner of the vehicle had no knowledge). "The car must be driven with the permission of the owner, but this may be inferred from very general circumstances." **Gray v. Mitsky**, 280 S.W.3d 828, 830 (Tenn. Ct. App. 2008) (quoting **Thurmon**, 62 S.W.3d at 156).

[7] Another requirement of the family purpose doctrine is that "the family purpose driver must have
(continued...)

is inapplicable as a matter of law because he did not provide the Mercedes to Beau for the purpose of providing pleasure or comfort to the family.

More specifically, Father first contends that he maintained the Mercedes not for the use of the family, but for the use of Son, specifically. In *Camper*, 915 S.W.2d at 447, the Court explained that "the head of a household who maintains a motor vehicle *for the general use and convenience of the family* is liable for the negligence of any member of the family driving the vehicle, provided the driver received express or implied consent." (emphasis added). Father claims that because he purchased the Mercedes for Son and a separate vehicle for his younger daughter when she turned sixteen, then the Mercedes was not maintained for the general use and convenience of the family. Father points out that in *Droussiotis v. Damron*, 958 S.W.2d 127, 133 (Tenn. Ct. App. 1997), the Court noted that one question arising from the facts before it was "whether multiple automobiles furnished specifically to particular members of a family and not for the general and unrestricted use of all members of the family are 'family purpose' vehicles?" The Court did not address the issue because it resolved the case on other grounds, but Father claims that the Court's concern over the issue demonstrates that there is a difference between maintaining an automobile for the general use of the entire family and maintaining one for a specific family member. However, Father does not attempt to explain how these two situations are different, and we do not discern any meaningful difference between the two for purposes of the applicability of the family purpose doctrine. The policies underlying the family purpose doctrine would not be served if a parent could escape liability under the doctrine by simply purchasing multiple vehicles for his or her children rather than a single vehicle.

Again, we find no Tennessee case resolving this issue.[8] Not long after our Supreme Court adopted the family purpose doctrine in *King v. Smythe*, 204 S.W. 296 (Tenn. 1918), the Court discussed the doctrine again in *Meinhardt v. Vaughn*, 17 S.W.2d 5 (Tenn. 1929). In

---

[7](...continued)
been using the motor vehicle at the time of the injury in furtherance of [the family] purpose with the permission, either expressed or implied, of the owner." *Camper*, 915 S.W.2d at 447. The answer filed on behalf of Father and Son admitted that the Mercedes was being used by Son with Father's knowledge and permission for a family purpose. The accident occurred when Son was driving his younger sister and her friend home from the mall.

[8] We note that in *Turner v. Burress*, No. 02A01-9203-CV-00068, 1993 WL 8017, at *7 (Tenn. Ct. App. Jan. 19, 1993), we described the family purpose doctrine as applying when "(1) the vehicle involved was being maintained by the owner for the use and pleasure of the family *group*; and (2) at the time of the injury it was being used in furtherance of that purpose and with the permission, either expressed or implied, of the owner." (emphasis added). However, we did not actually address the issue of whether the family purpose doctrine is inapplicable when a vehicle is maintained solely for the use of the driver. *Id.*

*Meinhardt*, the family purpose doctrine was asserted against a father who had provided a motorcycle for the exclusive use of his son in going to and from school. The father argued that those facts were distinguishable from *King* for several reasons:

> (1) In [*King*] an automobile was the instrumentality; here a motorcycle. (2) *There the machine had been purchased for the use of a family of several; here for the use of this son only*. (3) There the family purpose was pleasure and recreation only; while here it was chiefly for transportation to and from school. (4) There the father was the unquestioned and exclusive owner; while here it is insisted that the machine was the property of the son.

*Id.* at 6 (emphasis added). The Court addressed these arguments as follows:

> Do these differences in the facts go to the principles applicable?
>
> (1) First, as to the character of the instrumentality. In *King v. Smythe*, Mr. Justice Lansden said: "It is true that an automobile is not a dangerous instrumentality so as to make the owner liable, as in the case of a wild animal loose on the streets; but, as a matter of practical justice to those who are injured, we cannot close our eyes to the fact that an automobile possesses excessive weight, that it is capable of running at a rapid rate of speed, and, when moving rapidly upon the streets of a populous city, it is dangerous to life and limb and must be operated with care." All of this is equally true of a motorcycle.
>
> (2) And, the opinion proceeds, "If an instrumentality of this kind is placed in the hands of his family by a father," *or as truly, if placed in the hands of one member of his family*, "for (3) the family's pleasure, comfort, and entertainment," or even more certainly for the family's use in transportation to and from school, "the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form."
>
> It is plausibly insisted that the case of a single minor member of the family, going to school and driving a motorcycle, does not differ in its applicability to the reasoning and principles laid down in *King v. Smythe* from that of an automobile driven by an adult son of a family of several out for pleasure . . . .

*Id.* (emphasis added). However, when considering the fourth issue regarding ownership of

-12-

the vehicle, the Court struggled with whether it was "materially controlling" that the motorcycle was titled in the name of the son rather than the father. *Id.* Following a lengthy discussion of the issue of ownership, the Court ultimately decided that, "however plausible, as above shown, may be the view taken by the trial court and Court of Appeals that the family purpose doctrine may be applied to the case before us, it must be conceded that some extension of the application of this comparatively new and much criticized doctrine is involved." *Id.* at 7. As such, the Court found that liability could be imposed against the father on another ground and did not rest its holding on the family purpose doctrine. *Id.*

Despite the Court's ultimate decision on other grounds, we find the Court's discussion of the issue before us instructive. The policies underlying the family purpose doctrine apply when a vehicle "'is placed in the hands of his family by a father,' or as truly, if placed in the hands of one member of his family." *Id.* at 6 .

Regarding the other element of the family purpose doctrine, not at issue here, that "the family purpose driver must have been using the motor vehicle *at the time of the injury* in furtherance of [a family] purpose with the permission, either expressed or implied, of the owner," *Camper*, 915 S.W.2d at 447 (emphasis added), Tennessee courts have held that "a driver can be operating a vehicle for a family purpose 'even if the driver is only using the automobile for his own pleasure or convenience.'" *Gray v. Mitsky*, 280 S.W.3d 828, 831 (Tenn. Ct. App. 2008) (quoting *Thurmon*, 62 S.W.3d at 156). The family purpose doctrine "is predicated on the assumption that the driver is implementing a 'family purpose,' even if the driver is only using the automobile for his own pleasure or convenience." *Thurmon*, 62 S.W.3d at 156. We believe the same reasoning should apply to the issue before us. A vehicle can be maintained for a family purpose even if it is only intended for the general use and convenience of one family member. This interpretation is not without support. *See Calhoun v. Eaves*, 152 S.E.2d 805, 808 (Ga. Ct. App. 1966) ("It is essential that the automobile be furnished by the head of the family for a family purpose. . . . The vehicle may be furnished, however, for the use of less than all members of the family."); 61 C.J.S. *Motor Vehicles* § 845 ("As a general rule, the family purpose doctrine applies only to the acts of members of the family for whose use the vehicle is furnished. The vehicle may be furnished for the use of fewer than all members of the family.") In sum, the undisputed facts demonstrate that Father maintained the Mercedes for the general use of Son, but that does not preclude application of the family purpose doctrine. To the contrary, Father maintained the vehicle for a family purpose within the meaning of the doctrine.

Father also claims that the family purpose doctrine is inapplicable because he did not personally benefit from Son's use of the Mercedes, citing his testimony that he did not expect Son to perform errands for him using the Mercedes. We note that Son testified that it was his understanding that he *was* expected to perform family errands with the vehicle, and that he

was provided with the vehicle so that he would not be dependent upon other family members for transportation. Nevertheless, we conclude that this does not present a genuine issue of material fact that precludes summary judgment. As previously discussed, the family purpose doctrine's reference to being engaged in the owner's business does not mean that the driver must use the vehicle to perform specific errands for the owner. Rather, it means that the family member must use the vehicle consistently with the head of the household's purpose for purchasing it – the pleasure and convenience of the family. *Henley*, 2002 WL 100402, at \*16. The family purpose doctrine "is predicated on the assumption that the driver is implementing a 'family purpose,' even if the driver is only using the automobile for his own pleasure or convenience." *Thurmon*, 62 S.W.3d at 156.

Finally, Father argues that the family purpose doctrine is inapplicable as a matter of law because his purpose for providing the Mercedes was to comply with the marital dissolution agreement, not to provide pleasure or comfort to his family. He claims that he was simply attempting to fulfill his contractual obligation and points out that if he had not, he could have been held in contempt. While that may be true, we do not believe that because Father was complying with the marital dissolution agreement, it can no longer be said that he provided the car for the purpose of providing pleasure or comfort to the family. The marital dissolution agreement, which Father agreed to just weeks before Son's sixteenth birthday, expressly states that it was entered into freely and voluntarily. Thus, the fact that Father voluntarily agreed to provide Son a vehicle in the MDA does not mean that he did not do so for the purpose of providing pleasure or comfort to the family.

## V.  CONCLUSION

For the aforementioned reasons, we conclude, based on the undisputed facts, that the requirements of the family purpose doctrine are met and said doctrine applies to this case. Accordingly, we reverse the trial court's decision granting summary judgment to Father and remand for entry of an order granting partial summary judgment to Plaintiff, as Father is vicariously liable for the acts of Son based upon the family purpose doctrine. Costs of this appeal are taxed to the appellee, Paul B. Hill, Sr., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.