ANNABEL DROUSSIOTIS,         )       Appeal No.
                                   )       01A01-9612-CV-00548

        Plaintiff/Appellant,      )

                                   )

VS.                                )       Rutherford Circuit
                                   )       Case No. 31892

CINDY DAMRON, DONALD DAMRON,  )
and MRS. DONALD DAMRON,       )

                                   )

        Defendants/Appellees.     )

**FILED**

**July 16, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

## IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

## APPEAL FROM THE CIRCUIT COURT OF RUTHERFORD COUNTY
## AT MURFREESBORO, TENNESSEE

## HONORABLE J. S. DANIEL, JUDGE

Frank Fly
301 North Spring Street
Murfreesboro, TN 37130
ATTORNEY FOR PLAINTIFF/APPELLANT,

Steven A. Dix
201 West Main Street
Murfreesboro, TN 37130
ATTORNEY FOR DEFENDANTS/APPELLEES

## AFFIRMED AND REMANDED

                               HENRY F. TODD
                               PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

BEN H. CANTRELL, JUDGE,
WILLIAM C. KOCH, JR., JUDGE

| ANNABEL DROUSSIOTIS, | ) | Appeal No. |
| | ) | 01A01-9612-CV-00548 |
| Plaintiff/Appellant, | ) | |
| | ) | |
| VS. | ) | Rutherford Circuit |
| | ) | Case No. 31892 |
| CINDY DAMRON, DONALD DAMRON, | ) | |
| and MRS. DONALD DAMRON, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

## O P I N I O N

The captioned plaintiff has appealed from a summary judgment overruling her motion for summary judgment against the defendants, Mr. and Mrs. Donald Damron, and rendering summary judgment dismissing her suit against Mr. and Mrs. Donald Damron, parents of the third defendant, Cindy Damron, against whom a jury verdict of $552,500.00 was rendered and made the judgment of the Trial Court.

The complaint alleges that plaintiff was injured when struck by a vehicle operated by Cindy Damron, 22 year old daughter of the appellees. As to the liability of appellees, the complaint states:

> 6. Plaintiff states that the vehicle operated by Defendant, Cindy Damron was purchased and/or maintained by Defendants, Mr.& Mrs. Donald Damron, who are the natural parents of Defendant, Cindy Damron, for the general use, pleasure and convenience of the family members, including Defendant Cindy Damron. Plaintiff states that at the time of said collision, Defendant Cindy Damron was living at home with the parents as a dependent of said parents and that Defendant, Cindy Damron was using said vehicle for the family purpose of driving herself back and forth from said home in Coffee County, Tennessee to her classes at MTSU in furtherance of the family purpose of providing a college education for Defendant Cindy Damron with the express knowledge and consent of Defendants, Mr. & Mrs. Donald Damron, at the time of said collision.
>
> 7. In the alternative, Plaintiff states that Defendants, Mr. & Mrs. Donald Damron, purchased, provided or maintained said vehicle as a joint enterprise with Defendant, Cindy Damron, based upon the expressed or implied agreement between said parties to carry out the common purpose of providing transportation for the college education of Defendant, Cindy Damron and to engage in the expense sharing for said educational purpose with each party having an equal right to voice in the direction and to engage in the expense sharing for said educa-

tional purpose with each party having an equal right to a voice in the direction and control of said common educational purpose. Accordingly, under the facts of this case and the law of Tennessee, any negligence attributable to Defendant Cindy Damron is hereby imputed to Defendants, Mr. & Mrs. Donald Damron under the Family Purpose Doctrine and/or the Joint Enterprise theory of law.

To these allegations, Mr. & Mrs. Damron responded:

6. The Defendants deny the allegations contained with Paragraph VI of the Complaint, and therefore, strict proof is demanded thereof.

7. The Defendants deny the allegations contained with Paragraph VII of the Complaint, and therefore, strict proof is demanded thereof.

Mr. & Mrs. Damron's Motion for Summary Judgment states as grounds only the following:

Come now the Defendants, DONALD and MRS. DONALD DAMRON (hereinafter, DONALD and DONNA DAMRON), by and through counsel, and would respectfully move this Court, pursuant to Rule 56 of the Tennessee Rules of Civil Procedure, for summary judgment. The defendants would show that there is no genuine issue as to any material fact regarding the theories of liability asserted against these Defendants. In support of this Motion, a contemporaneously filed brief is submitted, along with the Affidavit of CINDY DAMRON.

The unsworn memorandum contains no admissible evidence.

A subsequently filed affidavit of Cindy Damron states:

1. The vehicle I drove on the date of the accident in this case (March 31, 1993), was titled to me. A copy of the title is attached hereto as Exhibit 1.

2. I had owned the car since 1991.

3. I maintained my own policy of insurance on the vehicle.

4. I was 22 years of age on the date of the accident.

5. I had complete control and discretion over the use of the vehicle.

6. I was going to one of my college classes at the time of the accident.

The title certificate does not appear in the record with the affidavit.

Subsequently, plaintiff moved for summary judgment against Mr. & Mrs. Damron, relying upon the affidavit/depositions of plaintiff, and the depositions of Mr. & Mrs. Damron which contain evidence of the following facts:

(1) Cindy Damron's parents had given her older brother a vehicle after he became old enough to drive.

(2) Cindy Damron's parents likewise provided her younger brother with a vehicle after he became old enough to drive, the same vehicle they had originally given to her older brother.

(3) Neither Cindy Damron nor her parents bought or paid for the vehicle Cindy was driving at the time of the accident because it was given to her by her Grandfather.

(4) Cindy's father sometimes pays to renew the license plates on said vehicle.

(5) Cindy's parents sometimes pay for the insurance on said vehicle.

(6) Cindy's younger brother sometimes does the tune-ups on said vehicle.

(7) As a part of these tune-ups, Cindy's younger brother worked on the transmission, radiator, and brakes of said vehicle.

(8) When Cindy paid her younger brother for repair work done on said vehicle, she paid with money that she got from her mother.

(9) Every time said vehicle needed repairs that were not done by Cindy's younger brother, Cindy's father carried said vehicle to the repair shop and paid for all such repairs.

(10) In addition, Cindy's father bought and paid for the new battery in said vehicle and her father paid for new tires on said vehicle.

(11) Cindy's older brother installed a new radio on said vehicle.

– 4 –

(12) Cindy's father filled up said vehicle with gasoline practically every Sunday afternoon so that Cindy could return from home in Tullahoma to MTSU, and he always paid for said gas himself.

(13) The tank of gas provided by Cindy's father each Sunday afternoon would last her all week, until the next Sunday afternoon.

- -- -

(1) Cindy drove said vehicle whenever she wanted.

(2) Cindy did not need anyone's specific permission to drive said vehicle.

(3) Cindy's father and younger brother would also drive said vehicle from time to time.

(4) Cindy used said vehicle to go from her parent's home in Tullahoma to the grocery store, post office, and to visit friends and relatives.

(5) When Cindy used said car to go to the grocery store in Tullahoma, she would sometimes get food for everybody in her family.

(6) Cindy also used said car to run errands for the day care business operated by her mother at their home in Tullahoma, such as to go to the grocery store and buy food for all the children.

(7) Cindy's grandfather gave her the car because she needed transportation to go from her home in Tullahoma to town, to church, to run errands and to do things.

(8) Cindy's parents would sometimes ride with her in said car to church and to visit relatives.

(9) Cindy's mother would sometimes ride in said car with Cindy to town, to the store, and to ball games.

(10) Other family members would sometimes ride in said car with Cindy to the grocery store and post office.

(11) From time to time Cindy would carry her younger brother places such as to band practice, to town, and to visit his friends.

(12) In addition, Cindy's younger brother would sometimes ride in said car with her to church and to visit relatives.

(13) Cindy's grandfather provided said car to her at about the same time she started school at MTSU.

(14)  At the time her grandfather provided said car, it was understood that part of what Cindy would use the car for was to go back and forth from home to MTSU.

(15)  Cindy did, in fact, use said car to go back and forth from home to school at MTSU.

(16)  Actually, Cindy did very little driving except to go back and forth from home to school at MTSU.

- - - -

(1)  Cindy lived at home with her parents her entire life except when she was in the dorm at MTSU.

(2)  After graduating from high school, Cindy attended Motlow College for three years and then attended MTSU for three years.

(3)  While attending Motlow College, Cindy lived at home with her parents in Tullahoma.

(4)  Cindy continued to live at the home of her parents as her principal residence even after she enrolled at MTSU.

(5)  When in Murfreesboro to attend MTSU, Cindy stayed only in the dormitory on the MTSU Campus.

(6)  Cindy came home from MTSU practically every weekend, sometimes beginning on Thursday afternoons.

(7)  While at home on these weekends, Cindy would do her laundry, attend church, and eat all her meals at home.

(8)  Cindy lived at home full time while doing her student teaching during her last semester at MTSU.

(9)  Cindy never had a full-time job.

(10) Cindy worked for her mother's day care business during the Summer but she does not know how much, how often, or at what rate her mother paid her.

(11) Cindy never worked for anyone else except for her mother.

(12) Cindy worked as an Avon representative for about two years but did not really make much money.

(13) Cindy never had any income other than from her mother and Avon.

(14) Cindy's parents provided financial support for her throughout her life.

(15) Cindy's parents continued to provide her financial

support after she graduated from high school and throughout the time she attended college.

(16) In addition to the other financial support provided to Cindy by her parents while she was in college, they also gave her spending money.

(17) Cindy never made enough money on her own to pay for her college expenses.

(18) While at MTSU, whenever Cindy needed more money, her mother would take money out of her parents' account and put it in Cindy's account.

(19) Cindy's mother is on both Cindy's checking account and savings account with her.

(20) In addition to the above support, Cindy's father pays all her medical insurance and pays for all her medical and dental expenses not covered by insurance including expenses incurred while in college.

(21) Cindy's father also provides her life insurance.

(22) Cindy has never paid her parents for any rent, utilities, food, telephone, or cable TV.

(23) Cindy's parents have paid for all of her vacations except for one school trip while at MTSU.

(24) Cindy's parents have provided all of the furniture Cindy has ever had, and Cindy's mother buys her clothes for her.

(25) Cindy's parents set up a trust account for her, mostly to pay for her college education.

(26) The trust account is in her mother and father's names as trustees.

(27) Cindy's mother and father regularly contributed to the trust with money earned from their jobs.

(28) Cindy's parents have complete control over the trust account.

(29) Although she sometimes contributed money, Cindy knows nothing about the details of the trust account.

(30) The trust account consists only of a certificate of deposit and a savings account, and never had more than $10,000 or $12,000 in it.

(31) Cindy got her first driver's license the Summer be-

fore she enrolled at MTSU, some three years after graduating from high school.

(32) Cindy never had a car before this one.

(33) Cindy's father felt that Cindy was capable of college work and capable of getting a college degree.

(34) Accordingly, Cindy's father thought that it was in her best interest that she go to college.

(35) It was the opinion of Cindy's father that Cindy would earn more money if she had a college education.

(36) Cindy's father also believed that it would be less likely for him to have to contribute to Cindy's support if she had a college education.

The Trial Court sustained the motion of Mr. & Mrs. Damron for summary judgment and overruled plaintiff's motion for summary judgment.

As stated above, a jury rendered a verdict in favor of plaintiff and against Cindy Damron for $552,500.00 which was approved and made the judgment of the Trial Court. Cindy Damron has not appealed from this judgment.

On appeal, plaintiff presents a single issue as follows:

Does the Family Purpose Doctrine apply to the facts of this case so as to hold the parents, Mr. and Mrs. Damron, financially responsible for the negligence of their daughter, Cindy?

As worded, the issue relates to the disposition by the Trial Court of the motions of plaintiff and of Mr. & Mrs. Damron.

# I.

## The Law

The "Family Purpose Doctrine" as applied to automobiles prevails in Tennessee. *Schwartz v. Johnson*, 152 Tenn. App. 586, 280 S.W. 32 (1926).

The head of a family is liable under the family purpose doctrine only under the doctrine of respondeat superior. *Messer v. Reid*, 186 Tenn. App. 94, 208 S.W.2d 528 (1948). This suit against both mother and father presents an interesting question of whether a family can have two heads.

For the family purpose doctrine to be applicable, two requirements must be satisfied: the head of the household must maintain the automobile for the purpose of providing pleasure or comfort for his or her family, and that the family purpose driver must have been using the motor vehicle at the time of the injury in furtherance of that purpose with the permission, either express or implied, of the owner. *Camper v. Minor*, Tenn. App., 915 S.W.2d 437 (1996).

The family purpose doctrine is inapplicable unless the person on whom liability is sought to be imposed owned, maintained or furnished the automobile for the benefit of his family or had or exercised some degree of control over its continued use by the family. *Boles v. Russell*, 36 Tenn. App. 159, 252 S.W.2d 801 (1933).

Under the family purpose doctrine, the head of a family who maintains a motor vehicle for the general use, pleasure and convenience of the family, is liable for the negligence of any member of the family driving the vehicle with his consent, either express or implied, but liability is imposed only when it can be done consistently with the principles of respondeat superior. *Redding v. Barker*, 33 Tenn. App. 132, 230 S.W.2d 202 (1950).

In *Hill v. Smith*, 32 Tenn. App. 172, 222 S.W.2d 207 (1949), where a mother furnished an automobile to her minor son to drive to and from a Y.M.C.A. meeting for his moral and cultural benefit, this Court held that the mother was held liable for the negligence of the son while on said errand, quoting *King v. Smyth*, 140 Tenn. App. 217, 204 S.W. 296 (1918), 5 Am. Jur., Sec. 371; 64 A.L.R. 878 wherein the Tennessee Supreme Court said:

> "The law of agency is not confined to business transactions. It is true that an automobile is not a dangerous instrumentality so to make the owner liable, as in the case of a wild animal loose on the streets; but, as a matter of practical justice to those who are injured, we cannot close our eyes to the fact that an automobile possesses excessive weight, that it is capable of running at a rapid rate of speed, and when moving rapidly upon the streets of a populous city, it is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained. A judgment for damages against an infant daughter or an infant son, or a son without support and without property, who is living as a member of the family, would be an empty form. The father, as owner of the automobile and as head of the family, can prescribe the conditions upon which it may be run upon the roads and streets, or he can forbid its use altogether. He must know the nature of the instrument and the probability that its negligent operation will produce injury and damage to others. We think the practical administration of justice between the parties is more the duty of the court than the preservation of some esoteric theory concerning the law of principal and agent. *If owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities.*" (Emphasis supplied.)

In *Driver v. Smith*, 47 Tenn. App. 505, 339 S.W.2d 135 (1960), a minor daughter obtained special permission to use the parent's vehicle for pleasure during which she permitted a minor friend to control the vehicle, and he negligently caused a collision which seriously injured several occupants of the vehicle. This Court affirmed a judgment against the owner-father on special grounds set out therein, i.e., failure to exercise suitable control over the daughter.

The facts of the present case are not completely consonant with those of any published Tennessee decision.

Cindy Damron was not a minor at the time of the injury. She was a college student attending Middle Tennessee State University. She was driving a vehicle which she had owned since 1991, which was titled in her own name and over the use of which she exercised complete control. She was on her way to meet one of her college classes at the time of the injury.

The vehicle was given to Cindy Damron by her grandfather for her particular use in attending school, but various members of the family rode with her from time to time and occasionally used it.

While in college, Cindy Damron usually spent the weekend at home where she did her laundry, attended church and ate her meals during the weekend.

Cindy Damron never had remunerative employment. At all material times, her support was furnished by her parents out of trust funds contributed by them and by contributions in kind, such as gasoline, utilities, insurance, furniture and clothing.

Mr. Damron desired that his daughter attend college and considered that it was in her best interest to do so.

Each of Cindy Damron's siblings was presented with a personal automobile upon receiving a driver's license.

Cindy Damron's brother performed the labor for maintaining her vehicle.

One question arising from these facts is whether multiple automobiles furnished specifically

to particular members of a family and not for the general and unrestricted use of all members of the family are "family purpose" vehicles?

Another question is where the head (or heads) of the family do not furnish the automobile, but "maintain" it by furnishing fuel, oil, and parts, license and insurance, does this participation constitute "maintenance" or furnishing of the vehicle to support the family purpose doctrine?

A third issue is, whether furnishing 100% of support (but, not furnishing the automobile) to a minor for attending college render a parent liable under the family purpose doctrine?

A fourth issue is whether such support without furnishing the vehicle to an adult college student renders a parent liable under the family purpose doctrine or the doctrine of respondeat superior?

This Court concludes that the facts of the present case do not qualify under the family purpose doctrine or the doctrine of respondeat superior.

Even though a vehicle might be purchased and maintained by the head or heads of a family for the sole benefit of a single member of a family, the vehicle in the present case was not purchased, owned or controlled by the heads of the family who provided maintenance.

Although the education of a minor student might be said to be the "business" of the students parents, the operator or the vehicle in the present case was not a minor for whom her parents had an obligation to furnish an education to furnish an advanced education, and was not generally subject to the control of the parents.

For the reason stated, the judgment of the Trial court is affirmed. Costs of this appeal are taxed against plaintiff and her surety. The cause is remanded to the Trial Court for further necessary proceedings.

**AFFIRMED AND REMANDED**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCUR:


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE