IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 24, 2000 Session

## BENNIE J. FAULKNER, ET AL. v. HOMER SKELTON, ET AL.

**An Appeal from the Circuit Court for Shelby County**
**Nos. 83740 and 83741    Robert L. Childers, Judge**

---

**No. W1999-00621-COA-R3-CV - Filed January 5, 2001**

---

This is a personal injury and wrongful death case involving an automobile accident. The plaintiffs, husband and wife, suffered injuries, and the wife's mother, a passenger in the car, died as a result of the accident. The driver of the other car was a sixteen-year old boy. The plaintiffs sued the boy's grandfather, and various corporate entities that he owned, alleging that they were the true owners of the car and had let the boy drive it for family and business purposes, and also alleging negligent entrustment. The trial court granted summary judgment to the defendants. We affirm, finding the evidence insufficient to support claims under any of these theories.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J, joined.

James F. Schaeffer, Jr., Memphis, Tennessee, for the appellants, Bennie J. Faulkner, et al.

Louis F. Allen, David A. McLaughlin, Memphis, Tennessee, for the appellees, Homer Skelton, et al.

### OPINION

This is a personal injury and wrongful death case. On the evening of December 11, 1995, Joshua D. Baker ("Baker"), age sixteen, was driving west on Sea Isle Road in Memphis, Tennessee. He allegedly disregarded a stop sign at the intersection of Perkins Street and Sea Isle Road and wrongfully entered the intersection, colliding with a car going north on Perkins, driven by Plaintiff Bennie J. Faulkner. In the car with Mr. Faulkner were his wife, Marilyn, and her mother, Marion Young. Mr. and Mrs. Faulkner, as well as Mrs. Young, were injured in the collision. Mrs. Faulkner suffered permanent injuries, and Mrs. Young's injuries eventually resulted in her death on December 14, 1995.

Plaintiffs Bennie and Marilyn Faulkner (the "Faulkners") filed two lawsuits in the Circuit Court of Shelby County. The first alleged negligence resulting in personal injuries to Bennie J. Faulkner and Marilyn Faulkner, and the second alleged negligence resulting in the wrongful death of Marion Young. In both Complaints, the Faulkners named as defendants Homer Skelton ("Skelton"), Baker's grandfather, as well as entities owned by him, Covington Pike Toyota, Inc., and Homer Skelton Enterprises, Inc. The lawsuits alleged that Skelton and the corporate Defendants were the true owners of the automobile driven by Baker.

The automobile driven by Baker, a 1992 Geo Prism, was titled in Baker's name. However, the Faulkners alleged that Skelton and his corporate entities owned and maintained the automobile for family and business purposes. They asserted that Covington Pike Toyota, Inc., a car dealership which is owned and controlled by Skelton, was the true owner of the car because it financed the purchase price with no money down, no specified rate of interest, and no specific payment plan. The Faulkners further contended that Covington Pike Toyota and Skelton had negligently entrusted the car to Baker. Skelton and the corporate Defendants filed motions for summary judgment on both actions, arguing that the facts as alleged by the Faulkners were insufficient to support an action based on the family purpose doctrine, a "business purpose" doctrine, or on a theory of negligent entrustment.

In deciding the motions for summary judgment, the trial court considered the following facts. On October 29, 1995, Baker turned sixteen years old and received his driver's license. On approximately November 30, 1995, he purchased the 1992 Geo Prism from Covington Pike Toyota for $4,679.72. He paid no money down for the car and financed one-hundred percent of the purchase price through Covington Pike Toyota. No one co-signed the note for Baker. Baker testified that he did not choose the car before he bought it, nor did he know who had chosen the car for him. He testified that he talked to his grandfather and Vaughn Johnson, an employee of Covington Pike Toyota, and that they arranged for him to purchase the car. Homer Skelton and Vaughn Johnson, however, denied any involvement in arranging this transaction.

On December 4, 1995, Baker began working part-time at Homer Skelton Mazda, another car dealership owned by his grandfather, answering telephones and performing credit checks. Covington Pike Toyota allowed Baker to make payments on his car note by having money deducted from his paycheck from Homer Skelton Mazda every week. Baker had no formal loan contract, no specified interest rate, and no payment booklet to record the payments that he made.

Skelton provided money for Baker's private school tuition and had established a trust for the benefit of Baker and his mother that paid Baker's mother $750 per month. He provided a car for Baker's mother to use, and provided a house for her and Baker to live in. He denied having any direct involvement in arranging the purchase of Baker's car, despite Baker's testimony that he bought the car after talking with his grandfather.

On the day of the accident, Baker left work at Homer Skelton Mazda at approximately 9:00 p.m. After leaving work, he visited a friend's house and then left to go buy a t-shirt at a local store. The accident occurred while Baker was on his way to the store. At the time the accident occurred, Baker had worked on four different days for a total of 14.95 hours. He had made one payment toward the purchase price of the car.

Based on these facts, the trial court granted summary judgment to Skelton and the corporate Defendants on May 14, 1999. From this order, the Faulkners now appeal.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The Faulkners argue that there are genuine issues of material fact which, if proven true, will support an action against Skelton and the corporate Defendants based on the following theories of liability: negligent entrustment, joint enterprise and agency, and the family purpose doctrine. The Defendants maintain that the Faulkners asserted liability at the trial court level only under the family purpose doctrine, a "business purpose" doctrine, and negligent entrustment. They contend that theories of joint enterprise and agency were not raised in the trial court, and therefore cannot be raised on appeal.

From our review of the record, it appears that the theories of joint enterprise and agency were not argued at the trial court level. Consequently, issues relating to these legal theories cannot be raised on appeal. *See Atkins v. Kirkpatrick*, 823 S.W.2d 547, 551 (Tenn. Ct. App. 1991). The remaining legal theories were argued by the Faulkners before the trial court and, as a result, will be considered on appeal. The Faulkners argue on appeal that the trial court erred in granting summary judgment to Skelton and the corporate Defendants, contending that there is sufficient evidence to support the claims that Skelton and the corporate Defendants were liable under the family purpose doctrine, under a "business purpose" theory, i.e. respondent superior, and for negligent entrustment. Elements of joint enterprise and agency may be considered in connection with the "business purpose" theory, or respondeat superior.

The Faulkners argue first that the evidence is sufficient to support a claim against Skelton under the family purpose doctrine. The Faulkners argue that Skelton should be considered the head of Baker's household, even though Baker did not live in Skelton's house, and that Skelton or the corporate Defendants should be considered as the true owner(s) of the car.

The family purpose doctrine is well-established law in Tennessee. *See Camper v. Minor*, 915 S.W.2d 437, 447 (Tenn. 1996); *Droussiotis v. Damron*, 958 S.W.2d 127, 131 (Tenn. Ct. App. 1997). Under the family purpose doctrine, the head of a family who maintains a vehicle for the family's use may be held liable for any family member's negligent driving of that vehicle. *See Camper*, 915 S.W.2d at 447. To be held liable under the family purpose doctrine, the defendant must be the head of the household and must maintain the vehicle for the purpose of providing pleasure or comfort for the members of the household. *See id.* (citing *Scates v. Sandefer*, 163 Tenn. 558, 44 S.W.2d 310 (Tenn. 1931)). Further, the family member must have been driving the vehicle with either the express or implied permission of the owner. *See Camper*, 915 S.W.2d at 447 (citations omitted).

The case of *Droussiotis v. Damron*, 958 S.W.2d 127 (Tenn. Ct. App. 1997) is instructive. In *Droussiotis*, the plaintiff was injured by a vehicle driven by a 22 year old college student. The student's grandfather gave the vehicle to his granddaughter upon her receipt of a driver's license. *See Droussiotis*, 958 S.W.2d at 129. The family purpose doctrine was asserted against the student's parents, not the grandfather. *See id.* at 133. At the time of the accident, the young woman lived primarily in her parents' home (she stayed in a college dormitory during the school week) and relied on her parents for most of her living expenses, including car maintenance. *See id.* at 132-33. While the parents did not furnish the car, they provided for its upkeep and maintenance. The Court in *Droussiotis* held that the parents were not liable under the family purpose doctrine because the vehicle, although maintained by the parents, was not purchased or owned by them. *See id.* at 133. Additionally, the Court noted that the young woman's use of the vehicle was generally not subject to the control of her parents. *See id.*

The Faulkners argue that even though Skelton is not Baker's father and Baker does not reside with Skelton, Skelton should nevertheless be considered the head of Baker's household because Skelton took an active role in providing for Baker, paid for his schooling and related expenses, and

-4-

bought the house in which Baker and his mother lived. The Faulkners note that Skelton had established a trust fund for the benefit of Renee Baker that paid her $750 per month at the time of this accident. The Defendants argue that no Tennessee court has ever extended the family purpose doctrine to include a grandparent who does not reside in the home as a head of household, and that the basis of liability under the family purpose doctrine is that children are subject to the "control" of the head of the household. The Defendants note that there is no proof that Skelton exercised control over Baker's use of the vehicle, or that he had the right to do so.

In addition to arguing that Skelton should be considered the head of Baker's household, the Faulkners contend that Skelton should be considered the owner of Baker's vehicle because there was no **bona fide** transfer of the vehicle from Covington Pike Toyota to Baker, and that the transfer of the ownership of the vehicle to Baker was a "sham transaction" intended to insulate Skelton from any liability caused by Baker's negligent driving. The Faulkners also assert that Skelton maintained control over the vehicle by retaining a lien on the vehicle as well as a "nebulous" agreement concerning payment for the car. They cite a Georgia case, ***Esco v. Jackson***, 366 S.E.2d 309, 311 (Ga. Ct. App. 1988), in support of their contention that the defendant need not be the driver's parent in order to be held liable under the family purpose doctrine.

The Faulkner's argument simply strains at every element of the family purpose doctrine. Some courts from other jurisdictions have held that a non-parent living in the same house as the driver of the car may be considered the "head of the household" under the family purpose doctrine. ***See, e.g., Esco v. Jackson***, 185 Ga. App. 901, 366 S.E.2d 309 (Ga. Ct. App. 1988). Likewise, other courts have held that a parent of the driver of a vehicle who furnishes the vehicle, but does not live with the driver, may be deemed the head of the driver's household under the family purpose doctrine. For example, in ***Alexander v. Kendrick***, 213 S.E.2d 911, 914 (Ga. Ct. App. 1975), the driver of the vehicle was a minor girl whose parents were divorced. The daughter lived with her mother, but the father admitted that he furnished the vehicle to the daughter, and also admitted that he was the head of the household. Relying heavily on the father's admission that he was the head of the daughter's household, the Georgia court held the family purpose doctrine applied even though the father did not live with the driver of the vehicle.

However, the Faulkners cite no case, from Tennessee or elsewhere, in which a non-parent who does not reside with the driver of the vehicle has been held vicariously liable under the family purpose doctrine. When viewed in light of the somewhat strained argument that Skelton furnished the vehicle and maintained "control" by virtue of the car payment arrangements, we must hold that, under the facts of this case, the family purpose doctrine is inapplicable.

In the trial court below, the Faulkners argued that Skelton and the corporate Defendants were liable under the "business purpose" doctrine. They cite no Tennessee cases referring to a "business purpose" doctrine, but it appears to be a reference to the doctrine of respondeat superior. The Faulkners' claims and the evidence presented will be analyzed under the doctrine of respondeat superior and, as indicated previously, some elements of joint enterprise and agency may be considered as part of this analysis.

Under the doctrine of respondeat superior, an employer may be liable for negligent acts committed by an employee while acting in the scope of his employment. *See Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). For an employer to be held liable, the plaintiff must show that (1) the person who caused the injury was an employee, (2) the employee was working on the employer's business at the time of the accident, and (3) the employee was acting within the scope of his employment when the injury occurred. *See id.* In the case at bar, it is undisputed that Baker was an employee of Skelton. The pivotal issue is whether Baker was acting "within the scope of [Skelton's] business purpose." On appeal, the Faulkners argue that Baker and Skelton engaged in a joint enterprise with the common purpose of providing a vehicle for Baker to drive to work and to school. In the trial court, they did not mention "joint enterprise" and did not argue a "business purpose" of providing Baker transportation to school; they alleged only that Skelton provided the car to Baker for the business purpose of giving him transportation to and from work. The evidence presented will be evaluated on that basis.

There is no evidence in the record that Baker was working on Skelton's business when the accident occurred. On the day of the accident, Baker left work at Homer Skelton Mazda at approximately 9:00 p.m. After leaving work, he went to a friend's house, and then left to go to a local store to buy a t-shirt. The accident occurred while Baker was on his way to the store. The law is clear that "when a servant deviates from his line of duty and engages in a mission of his own or for some third person, the master cannot be held liable under the rule of respondeat superior." *Craig v. Gentry*, 792 S.W.2d 77, 79 (Tenn. Ct. App. 1990). After Baker left his friend's house to go to a store to buy a shirt, he clearly was not using the vehicle for a business purpose and was not acting in the scope of his employment. Based on these facts, Skelton and the corporate Defendants cannot be held liable under the doctrine of respondeat superior or under a "business purpose" doctrine.

Finally, the Faulkners assert that the trial court erred in granting summary judgment to the Defendants on their claim of negligent entrustment. The Faulkners contend that Skelton should have known that Baker was not competent to operate a motor vehicle, in light of his young age and his inexperience as a driver. It is undisputed that Baker had not been involved as the driver in any accident prior to the incident at issue.

The tort of negligent entrustment of an automobile requires that the person entrusting the vehicle (1) had control over the vehicle at the time it was entrusted, and (2) knew or should reasonably have known from the facts available that the person to whom the vehicle was entrusted was an incompetent driver. *See Rimer v. City of Collegedale*, 835 S.W.2d 22, 24 (Tenn. Ct. App. 1992). In *Rimer*, the Court noted that:

> "in order for [negligent entrustment] to apply, it is essential that the one sought to be held legally responsible have the right of control over the vehicle," and " . . . the liability of an owner . . . is generally imposed only where the owner entrusts the vehicle to one whose appearance or conduct is such as to indicate his incompetency or inability to operate the vehicle with care, and that to impose liability in other

cases, where the incompetency of the entrustee is not apparent to the entruster of the vehicle at the time of the entrustment, it must be affirmatively shown that the entruster had at that time knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency."

*Id.* (quoting 60A C.J.S. Motor Vehicles § 431(1) (1969)). In ***Kennedy v. Crumley***, 367 S.W.2d 797, 802 (Tenn. Ct. App. 1962), the Court stated that negligent entrustment can be proven by showing that the defendant knew of specific instances of carelessness or recklessness on the part of the driver to whom the defendant entrusted the vehicle, or upon showing that the driver's incompetence was known generally throughout the community.

In this case, even assuming Skelton or the corporate Defendants exercised control over the vehicle once it was sold to Baker, there is no evidence of facts that would have put the Defendants on notice that Baker was incompetent to operate the motor vehicle. There is no evidence Baker was involved as the driver in any prior accidents, and no evidence Skelton knew of any prior incidents of carelessness or recklessness. Likewise, there is no evidence that Baker was generally known in the community as an incompetent driver. Since Baker had a license to operate the vehicle, his age and inexperience alone cannot support a claim of negligent entrustment. Under these circumstances, the evidence is insufficient to impose liability on Skelton or the corporate Defendants under the theory of negligent entrustment.

In sum, we find the family purpose doctrine inapplicable because there is no precedent for holding liable a non-parent who does not live in the driver's household, particularly in light of the tenuous arguments that Skelton owned the vehicle and controlled Baker's use of it. Under the Faulkner's "business purpose" claim, or the doctrine of respondeat superior, there is no evidence that, at the time of the accident, Baker was using the vehicle on the Defendants' business or that he was acting within the scope of his employment. As to the Faulkners' claim for negligent entrustment, there is no evidence to put Skelton on notice that Baker was incompetent to operate the vehicle. Therefore, the trial court did not err in granting summary judgment to the Defendants on all claims asserted.

The decision of the trial court is affirmed. Costs are assessed against Appellants, Bennie J. Faulkner and Marilyn Faulkner, and their surety, for which execution may issue if necessary.

 

 

_____
HOLLY KIRBY LILLARD, JUDGE